Filed 3/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARTIN KEITH LANE, JR., | B245661 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC482348) |
| v. | |
| FRANCIS CAPITAL MANAGEMENT LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Abraham Khan, Judge. Affirmed in part, reversed in part, and remanded with instructions.

Seyfarth Shaw, David D. Kadue, and Coby M. Turner for Defendant and Appellant.

Jeffer Mangels Butler & Mitchell, and Travis Gemoets for Plaintiff and Respondent.

_____

## INTRODUCTION

Francis Capital Management LLC (FCM) appeals from an order denying its motion to compel a former employee, respondent Martin Keith Lane, Jr., to arbitrate his employment claims against appellant. FCM contends the trial court erred in determining (1) that Labor Code section 229 allowed Lane to maintain his claims in superior court, and (2) that the arbitration agreement was unconscionable.[1] For the reasons stated below, we conclude that section 229 applies to only one of Lane's claims, and that the arbitration agreement was not unconscionable. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## PROCEDURAL HISTORY

On April 5, 2012, Lane filed a complaint for damages against FCM, arising from FCM's purported failure to pay Lane a bonus, its unlawful labor practices, and its termination of Lane's employment. In the complaint, Lane alleged eight causes of action: (1) wrongful termination in violation of public policy; (2) breach of oral contract; (3) failure to pay wages; (4) unpaid overtime wages (§ 510); (5) unpaid meal period wages (§§ 226.7, 512); (6) waiting time penalties (§§ 201, 202, 203); (7) itemized wage statement violations (§ 226); and (8) unfair competition (Bus. & Prof. Code, § 17200 et seq.). Lane also alleged that he is a resident of Los Angeles County, California; that FCM is a corporate entity organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California; and that the acts and omissions that are the subject of the complaint occurred in the County of Los Angeles, California.

_____

[1] All further statutory citations are to the Labor Code, unless otherwise stated.

Lane further alleged that he was hired as an analyst in FCM's Los Angeles office, and was verbally promised a base annual salary of $150,000, participation in an annual bonus program (with a minimum annual bonus of $100,000), and additional benefits, including medical insurance, paid holidays, and vacation. After he was not paid his bonus for a prior year's work, Lane complained, and was subsequently terminated.

On May 21, 2012, FCM moved, pursuant to Code of Civil Procedure sections 1281.1 et seq., for an order compelling arbitration of each of the causes of action asserted in the complaint. In the motion, FCM alleged that the parties were signatories to a valid, binding arbitration agreement that encompassed all of the causes of action. FCM also sought a stay of the proceedings pending the arbitration.

FCM submitted a copy of the written arbitration agreement executed by the parties in January 2008. In the two-page agreement, the parties agreed that "all claims, disputes and controversies arising out of, relating to or in any way associated with [Lane's] employment by [FCM] or the termination of that employment shall be submitted to final and binding arbitration," except for worker's compensation claims and certain administrative claims before federal or state administrative agencies. The parties further agreed to waive their rights to trial on "any such arbitrable claims or disputes." "Examples of such disputes or claims which must be resolved through arbitration, rather than a court proceeding, include, but are not limited to, wage, hour and benefit claims; contract claims; personal injury claims; tort claims; claims for wrongful termination; defamation; discrimination and harassment, including, without limitation, those claims brought under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the American with Disabilities Act, the California Family Rights Act, the

California Fair Employment and Housing Act, the Family and Medical Leave Act, the Employment Retirement Income Securities Act of 1974 and any other analogous state or federal statute or any other employment-related claim of any kind."

The parties further agreed to "arbitrate all such disputes and controversies according to the applicable employment dispute resolution rules of the American Arbitration Association then current Employment Arbitration Rules and Mediation Procedures. The arbitration proceedings will be held in Los Angeles, California or such other mutually agreeable place as determined by Employee and Company." In addition, the parties agreed that "[t]he arbitrator shall have the authority to award any damages or remedies authorized by law, including, without limitation, costs and attorneys' fees." Finally, the parties agreed that the arbitration agreement "shall be governed by the laws of the State of California."

Lane opposed the motion. Citing *Hoover v. American Income Life Insurance Company* (2012) 206 Cal.App.4th 1193 (*Hoover*), he contended that his statutory Labor Code claims were not subject to arbitration. Lane also argued that the arbitration agreement was procedurally unconscionable, as (1) it was a contract of adhesion, and (2) he was not provided a copy of the AAA rules. Lane further alleged that the agreement was substantively unconscionable, as (1) the agreement contained no express right to discovery, and (2) the AAA rules were incorporated by reference, requiring him to go to another source to access them.

In its reply, FCM contended that *Hoover* was distinguishable, as there, the arbitration agreement did not expressly encompass "wage, hour and benefit claims." In a footnote, FCM noted that *Hoover* was inapplicable where "federal preemption applies and the [Federal Arbitration Act (FAA)] is triggered." FCM

4

suggested that the FAA was triggered in the instant case, as, "Mr. Lane was a security analyst at a firm which manages capital investments."

FCM also argued that the arbitration agreement was not unconscionable, as (1) the provisions in the agreement did not fall outside the reasonable expectations of the weaker party, and (2) the provisions were not unduly oppressive or unconscionable. FCM contended that the failure to attach the American Arbitration Association (AAA) rules to the arbitration agreement did not render the agreement procedurally unconscionable, as the AAA rules were expressly referenced and incorporated without any changes adverse to the weaker party. FCM further contended that the agreement was not "silent" as to discovery, as discovery was provided for in the AAA rules.

On August 6, 2012, the trial court denied FCM's motion for an order compelling arbitration. Citing section 229, the court found that absent FAA preemption, an action for unpaid wages may be maintained without regard to the existence of any private agreement to arbitrate. Relying on *Hoover*, the court found that absent FAA preemption, statutory wage-and-hour claims were not subject to arbitration. As to the existence of FAA preemption, the court noted that "[r]eviewing courts have declined to consider the issue of FAA preemption where the issue was not addressed or fully developed in the trial court." Finally, the court found the agreement procedurally and substantively unconscionable, but did not specify in what manner the agreement was unconscionable.

On December 11, 2012, FCM filed a timely notice of appeal from the order denying its motion to compel arbitration.

5

## DISCUSSION

A.    *Standard of Review*

Under Code of Civil Procedure section 1281.2, a party to an arbitration agreement may petition the trial court to order the parties to the agreement to arbitrate a dispute.  The court shall order arbitration, unless it determines that the right to compel arbitration has been waived by petitioner, that grounds exist for rescission of the agreement, or that a party to the agreement is also a party to a pending court action or special proceeding with a third party.

The trial court may resolve motions to compel arbitration in summary proceedings, in which "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.  [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  "We will uphold the trial court's resolution of disputed facts if supported by substantial evidence.  [Citation.]  Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277; *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284 (*Giuliano*) [same].)

B.    *By its Terms, the Arbitration Agreement Encompassed Lane's Claims*

In the trial court, FCM showed the existence of a written agreement to arbitrate all of the causes of action alleged in Lane's agreement.  Prior to Lane's

6

employment, the parties entered into a written agreement to arbitrate all employment claims, including all "wage, hour and benefit claims," "contract claims," and "claims for wrongful termination." Under the plain language of the arbitration agreement, all of Lane's causes of action are subject to arbitration.

The trial court, however, determined that grounds existed to rescind or void the arbitration agreement. (See *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 98, fn. 4 (*Armendariz*) [although the Code of Civil Procedure uses ""'revocation of a contract,'"" "'rescission'" or "'voiding'" of an arbitration agreement is better terminology].) Specifically, the court determined that (1) the statutory Labor Code claims could be maintained pursuant to section 229 and *Hoover*, *supra*, 206 Cal.App.4th 1193, and (2) the arbitration agreement was unconscionable.

C. *Only Lane's Third Cause of Action Is Subject to Section 229*

Section 229 provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate," except as to an agreement to arbitrate in a collective bargaining agreement. Section 229 is found in article 1 of Division 2, Part I, Chapter 1 of the Labor Code, encompassing sections 200 through 244. Thus, if a cause of action seeks to collect due and unpaid wages pursuant to sections 200 through 244, that action can be maintained in court, despite an agreement to arbitrate.

In reviewing the eight causes of action in the complaint, we conclude that only the third falls under section 229. That cause of action seeks to collect unpaid wages due Lane for his labor. FCM concedes that this cause of action falls within

the purview of section 229, and that in the absence of preemption, it may be maintained in superior court.

The first, second, fourth and eighth causes of action, however, do not assert claims under sections 200 through 244 of the Labor Code. As to the fifth cause of action, styled "Failure To Pay Unpaid Meal and Rest Period Wages" under section 226.7, it is not, in fact, an action for the "collection of due and unpaid wages," but one for a failure to provide mandated meal or rest breaks. (See *Kirby v. Immoos Fire Protection, Inc*. (2012) 53 Cal.4th 1244, 1256-1257 (*Kirby*) ["[A] section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks."].)[2] Similarly, as to the sixth and seventh causes of action, they do not seek to collect due and unpaid wages; rather, they are actions for "waiting time penalties" (sixth cause of action) and for failure to provide itemized wage statements (seventh cause of action). Moreover, to the extent those causes of action could be interpreted to seek "due and unpaid wages," they are duplicative of the third cause of action. In short, under section 229, Lane can maintain only his third cause of action against FCM.

Lane contends that under the holding in *Hoover*, the statutory Labor Code claims set forth in his fourth, fifth, sixth, and seventh causes of action are not arbitrable, because the arbitration agreement failed to specify the Labor Code provisions at issue. Lane's reliance on *Hoover* is misplaced.

---

[2]     In the complaint, Lane also sought interest, costs and attorney fees under sections 218.5 and 218.6. As those remedies are not "due and unpaid wages," the citation to those Labor Code sections does not bring the cause of action within the scope of section 229. In addition, the *Kirby* court held that a plaintiff who prevails on a section 226.7 claim is not entitled to attorney fees and costs under section 218.5. (*Kirby*, *supra*, 53 Cal.4th at p. 1259.)

8

In *Hoover*, the plaintiff worked as a sales agent for a life insurance company. Before working as an agent, she executed an agent contract which was incorporated into a collective bargaining agreement (CBA). The agent contract specifically stated that an agent was an independent contractor, not an employee. The agent contract had an arbitration clause, requiring the parties to arbitrate "all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to" the agent contract. (*Hoover*, *supra*, 206 Cal.App.4th at p. 1199.) The CBA also expressly disclaimed that agents were employees. It included a grievance procedure, but no separate arbitration agreement. (*Id.* at pp. 1198-1199.)

After the plaintiff was terminated, she asserted statutory labor claims against the insurance company under sections 203, 1194 and 2802. (*Hoover*, *supra*, 206 Cal.App.4th at p. 1197.) The company moved for an order compelling arbitration, but the trial court denied the motion. The appellate court affirmed, holding that the company had waived its right to seek arbitration by its prejudicial litigation tactics. (*Id.* at p. 1203.) The appellate court further determined that even if the employer had not waived its right to seek arbitration, "state statutory wage and hour claims are not subject to arbitration, whether the arbitration clause is contained in the CBA or an individual agreement." (*Id.* at pp. 1206, 1198.) In reaching this determination, the appellate court first rejected the company's federal preemption argument, concluding that it had failed to meet its burden of proving that the subject agreement involved interstate commerce. (*Id.* at p. 1208.) The court then noted that the plaintiff's claims were based on statutory rights that were not subject to negotiation or waiver. (*Ibid.*) In order to waive the right to a judicial forum for resolving these statutory rights, the court held that "there must be a clear and unmistakable waiver of a judicial forum. [Citations.] In determining whether there has been a sufficiently explicit waiver of a judicial forum, courts look to the

generality of the arbitration clause; the explicit incorporation of statutory requirements; and inclusion of specific statutes, identified by name or citation. [Citation.]" (*Ibid*.) The court then determined that the general language of the arbitration clause in the agent contract did not evidence a sufficiently explicit waiver of the plaintiff's statutory employment claims. According to the court, "[e]ven if the parties could resolve statutory rights violations through arbitration, there is no provision in the agent contract or the CBA where Hoover agreed to do so. Even if the issues of minimum wage, reimbursement, and earned wages could be construed as subjects of the two contracts, Hoover still had not agreed to arbitrate her statutory labor claims." (*Id*. at p. 1208).

The instant case is readily distinguishable from *Hoover*. Here, the arbitration agreement not only expressly included "all claims, disputes and controversies arising out of, relating to or in any way associated with [Lane's] employment by [FCM]"; it further specified that these arbitrable claims or disputes included, but were not limited to, "wage, hour and benefit claims" and "any other analogous state or federal statute or any other employment-related claim of any kind." This language clearly evidences an intent by the parties to arbitrate Lane's statutory Labor Code claims.

Moreover, the language in *Hoover* cited by Lane is overly broad. In support of the assertion that "state statutory wage and hour claims are not subject to arbitration" in an individual agreement, *Hoover* cites section 229. (*Hoover*, *supra*, 206 Cal.App.4th at pp. 1206, 1207.) As discussed above, the plain language of section 229 is limited to actions for the collection of due and unpaid wages brought under sections 200 through 244; section 229 does not apply to *all* statutory wage and hour claims.

10

In addition, *Hoover*'s broad presumption against the arbitration of statutory labor claims conflicts with *Armendariz*. There, the California Supreme Court held that, under the California Arbitration Act, an arbitration agreement could encompass all statutory employment claims not expressly prohibited by the Legislature. (*Armendariz*, *supra*, 24 Cal.4th at p. 98.) As an example, the court noted that employment claims brought under the Fair Employment and Housing Act (FEHA) could be arbitrated, because the Legislature did not prohibit the arbitration of FEHA claims. (*Ibid*.)

Likewise, the fact that a claim is based on a nonnegotiable or unwaivable right does not preclude arbitration of that claim. As *Armendariz* made clear, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.'" (*Armendariz*, *supra*, 24 Cal.4th at pp. 98-99, citing *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628.) Thus, even statutory claims based on nonnegotiable or unwaivable rights may be subject to arbitration agreements, provided that arbitration allows the plaintiff to fully vindicate his or her statutory cause of action in the arbitral forum. (*Id*. at pp. 100-102.)

Finally, Lane's assertion that an arbitration agreement must specifically name the Labor Code provisions in order to bring those statutory labor claims within the scope of the arbitration agreement has no support in California law. Rather, the only requirement is that the language of the contract clearly evidence an intent by the parties to arbitrate the statutory labor claims. *Hoover* itself states only the unremarkable observation that an explicit reference to a statute in an arbitration agreement shows a clear intent to arbitrate claims arising from that statute. An explicit reference to a statute, however, is not required for a California

11

court to find that statutory claims are within the scope of the arbitration agreement. For example, in *Spellman v. Securities Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452 (*Spellman*), the appellate court held that an agreement to arbitrate "'any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association . . . [or] between or among members . . . and others" was sufficient to encompass an employee's racial discrimination claim brought under the FEHA. (*Id*. at p. 463, italics omitted.)[3] Here, the language in the arbitration agreement is much more specific than that in *Spellman*. It expressly identifies as subject to arbitration "wage, hour and benefit claims," cites numerous California employment statutes, and includes the phrase "any other analogous state or federal statute or any other employment-related claim of any kind." In short, FCM's statutory Labor Code claims are subject to arbitration, except for the third cause of action which, absent preemption, may be maintained pursuant to section 229.

D.      *FCM Did Not Demonstrate FAA Preemption of Section 229.*

Seeking to avoid application of section 229 to Lane's third cause of action, FCM contends that in the instant case, section 229 was preempted by the FAA.

---

[3]      A federal court examining the same arbitration language reached the opposite conclusion from the *Spellman* court's. (See *Prudential Ins. Co. of America v. Lai* (9th Cir. 1994) 42 F.3d 1299 (*Lai*).) In *Lai*, the Ninth Circuit held that a plaintiff could not be compelled to arbitrate her sexual discrimination case under the arbitration agreement because it did not "describe the types of disputes that were to be subject to arbitration" or "even refer to employment disputes." (*Id*. at p. 1305.) *Lai*, however, is contrary to California contract law. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1673 [rejecting *Lai* and determining arbitration clause applied to plaintiff's causes of action].) It is also distinguishable from the instant case in which the arbitration clause, by its terms, clearly encompassed Lane's claims.

(See *Perry v. Thomas* (1987) 482 U.S. 483, 492 [where FAA applies, it preempts section 229].)  In the trial court, FCM's only mention of FAA preemption came in a footnote, and the court's rejection of the argument was predicated on FCM's failure to develop a factual record in support of preemption.  Assuming the argument was preserved for appeal, we agree that FCM neither sought to nor succeeded in presenting facts sufficient to support a finding of FAA preemption.

A party seeking to enforce an arbitration agreement has the burden of showing FAA preemption.  (*Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211 (*Woolls*).)  For example, a petitioner seeking an order to compel arbitration must show that the subject matter of the agreement involves interstate commerce.  (*Ibid*.; *Giuliano*, *supra*, 149 Cal.App.4th at p. 1286 [same].)  Thus, in *Giuliano*, the employer supported its motion to compel arbitration with the declaration of its executive vice-president and chief legal officer that:  "(1) [Employer] engages in interstate commerce by acquiring, developing, and selling residential and commercial properties in both California and Arizona, and by shipping supplies from other states to California and Arizona; and (2) [employee] actively assisted [employer]'s multistate activities by negotiating loans with a bank that is headquartered outside of California."  (*Giuliano*, *supra*, 149 Cal.App.4th at p. 1283.)  The complaint also alleged that the employer was engaged in "'business throughout Arizona and California,'" and the employee admitted that he "'attend[ed] meetings, site visits and grand opening ribbon cuttings'" in other states.  On this record, this court found the interstate nature of the employment undisputed.  (*Id*. at p. 1287.)  Here, in contrast, the complaint alleged that Lane is a California resident and FCM a California corporate entity, doing business and with its principal place of business in California.  Lane never admitted to being engaged in interstate commerce, and FCM produced no declaration about the nature of its

business or the scope of Lane's employment. FCM's bare assertion that "Mr. Lane was a security analyst at a firm which manages capital investments" is insufficient to support a finding that Lane's employment involved interstate commerce.

The instant case more closely resembles *Woolls*. There, the petitioner sought to enforce an arbitration agreement that failed to comply with the disclosure requirements mandated in Business and Professions Code section 7191. (*Woolls*, *supra*, 127 Cal.App.4th at p. 200.) He argued that the statutory provision was preempted by the FAA, but submitted no declarations to show the transaction at issue involved interstate commerce. (*Id*. at p. 213). The court found the petitioner had failed to present a factual record establishing preemption. (*Ibid*.) Similarly, here, although FCM raised FAA preemption in a footnote, it submitted no declarations or other evidence to establish the facts necessary to show the employment relationship involved interstate commerce.

FCM's reliance on *Thorup v. Dean Witter Reynolds, Inc*. (1986) 180 Cal.App.3d 228 is misplaced. There, the appellate court found it "indisputable that an employment contract involving an account executive of a brokerage firm is a contract 'involving commerce' and is subject to the Act." (*Id*. at p. 233.) Here, there is no evidence from which this court could determine whether Lane is an "account executive" or similar employee, or whether FCM is a "brokerage firm" similar to Dean Witter. In short, FCM has not met its burden to show federal preemption.


E.    *The Arbitration Agreement Was Not Unconscionable*

As an alternative basis for its order, the trial court determined that the arbitration agreement was unconscionable, and, thus void. The court cited numerous and conflicting cases on unconscionability, but did not specify in what

14

manner the arbitration agreement was unconscionable. Based on the briefing below and on appeal, we discern the following grounds that purport to render the agreement unconscionable. First, the agreement was procedurally unconscionable because it was a contract of adhesion. Second, the agreement was procedurally unconscionable because a copy of the arbitration rules was not attached. Third, the agreement was substantively unconscionable because it incorporated arbitration rules, thus requiring the parties to consult another source to obtain them. Finally, the agreement was substantively unconscionable because it contained no express provision for discovery rights.

In considering these grounds for unconscionability, we draw upon the following principles enunciated by the California Supreme Court: "The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).)

1. *Procedural Unconscionability*

"[P]rocedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247, quoting *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1317.) Lane asserted

15

below and argues on appeal that the arbitration agreement was a contract of adhesion. The trial court made no finding on this issue. However, assuming the agreement was one of adhesion, courts have consistently held that that fact alone is insufficient to invalidate an arbitration agreement: "Rather, an adhesion contract remains fully enforceable unless . . . the provision falls outside the reasonable expectations of the weaker party" or it is unconscionable. (*Fittante v. Palm Springs Motors, Inc*. (2003) 105 Cal.App.4th 708, 722.) Here, the arbitration agreement is just two pages and contains no terms "hidden" in the form. Based on its plain language, including its express reference to "wage, hour and benefit claims," its application to Lane's claims is clearly within the reasonable expectations of the parties.

The trial court apparently found procedural unconscionability based on FCM's failure to attach a copy of the "applicable employment dispute resolution rules of the [AAA's] then current Employment Arbitration Rules and Mediation Procedures" to the arbitration agreement. The court cited *Trivedi v. Curexo Technology Corp*. (2010) 189 Cal.App.4th 387, 393 (*Trivedi*) for the proposition that the failure to provide a copy of the arbitration rules supported a finding of procedural unconscionability. (See also *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1523 [following *Trivedi* but also finding arbitration agreement procedurally unconscionable as a contract of adhesion]; *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485-486 (*Zullo*) [aside from arbitration agreement being a contract of adhesion, failure to attach arbitration rules added "a bit to the procedural unconscionability"].) We agree that the failure to attach the arbitration rules could be a factor in support of a finding of procedural unconscionability, but disagree that the failure, by itself, is sufficient to sustain a finding of procedural unconscionability. (See *Peng v. First Republic Bank* (2013)

16

219 Cal.App.4th 1462, 1472 ["failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability"].)

The failure to attach a copy of arbitration rules could be a factor supporting a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration. All of the cases relied upon by *Trivedi* can be analyzed under this principle. For example, in *Gutierrez v. Autowest, Inc*. (2003) 114 Cal.App.4th 77, the arbitration clause was on the back of the leasing agreement, printed in eight-point typeface, and included with numerous other provisions. (*Id*. at p. 84.) The consumer was never informed of the arbitration clause, never required to initial the clause, and never offered an opportunity to negotiate over its inclusion in the lease or to agree upon its specific terms. (*Id*. at p. 89.) On those facts, the court was not required to -- and did not -- rely upon the failure to attach a copy of the arbitration rules to find the arbitration clause procedurally unconscionable. (*Ibid*.)

Similarly, in *Patterson v. ITT Consumer Financial Corp*. (1993) 14 Cal.App.4th 1659, although the appellate court noted that the plaintiff borrowers were not given a copy of the arbitration rules, the court never relied on that fact to find procedural unconscionability. Rather, the court found the arbitration clause procedurally unconscionable because (1) it was contained in a contract of adhesion, (2) the arbitration rules were unclear as to the location of the arbitration, (3) it was outside the reasonable expectations of California consumers that arbitration would take place in Minnesota, and (4) the likely result of the procedures set forth in the arbitration rules was to deny California consumers a "participatory hearing." (*Id*. at pp. 1665-1666.)

The ambiguity of the arbitration agreement and possible surprising adverse results were also the issues in *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402.

17

There, the arbitration agreement provided that arbitration would be in accordance with "Uniform Rules for Better Business Bureau Arbitration," but did not specify "whether an arbitration would be conducted under the Better Business Bureau rules as of the time of contracting, or at the time of arbitration." (*Id*. at p. 1407.) Thus, the court noted, "even a customer who takes the trouble to check the Better Business Bureau arbitration rules before signing the contract may be in for a preliminary legal battle in the event that Better Business Bureau arbitration rules were to become substantively less favorable in the interim." (*Id*. at p. 1407.) The court further found (1) that the arbitration agreement precluded tort damages and punitive damages, and (2) that the failure to attach the arbitration rules allowed the defendant to "artfully" hide the inability of a consumer to receive full relief, resulting in a "nasty shock" to the consumer. (*Id*. at p. 1406.)

Similarly, in *Fitz v. NCR Corp*. (2004) 118 Cal.App.4th 702 (*Fitz*), the arbitration provision in the employment agreement allowed a different and separate written policy to limit the discovery permitted under AAA rules, yet the employer did not disclose that policy to its employees. (*Id*. at pp. 721-723.) In addition, the appellate court found not only that the arbitration agreement was a contract of adhesion, but that there was a "high degree of oppressiveness." (*Id.* at p. 722.) As *Fitz* and the preceding cases show, the failure to attach the arbitration rules was of "minor significance to [the courts'] analysis" of procedural unconscionability. (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737 [finding no procedural unconscionability despite failure to provide a copy of AAA rules].)

Here, we conclude the failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties -- the AAA rules are available on the Internet. (See *Boghos v. Certain*

*Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6 [full, up-to-date text of AAA rules is available on AAA's Internet site]).  In addition, Lane -- a formerly well-paid professional analyst -- does not appear to lack the means or capacity to locate and retrieve a copy of the referenced rules.  Finally, the arbitration agreement at issue clearly specified a particular set of AAA rules, and it did not modify those rules in any manner.  In the absence of oppression or surprise, we decline to find the failure to attach a copy of the AAA rules rendered the agreement procedurally unconscionable.  (Cf. *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981 ["Dotson is not an uneducated, low-wage employee without the ability to understand that he was agreeing to arbitration.  He was the opposite -- a highly educated attorney, who knowingly entered into a contract containing an arbitration provision in exchange for a generous compensation and benefits package.  In such circumstances, the courts have found a minimum degree of procedural unconscionability."].)

2.     *Substantive Unconscionability*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.]  A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'"  (*Pinnacle*, *supra*, 55 Cal.4th at p. 246, quoting *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213.)

The trial court apparently found the contract substantively unconscionable because it incorporated by reference the AAA rules.  We disagree.  Like any other contract, an arbitration agreement may incorporate other documents by reference.  (*Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790.)

19

For example, in *Tutti Mangia Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, this court affirmed the confirmation of an award following arbitration pursuant to an agreement that incorporated "the rules of the American Arbitration Association." (*Id*. at p. 736.) An arbitration agreement could, of course, impermissibly incorporate rules that are themselves substantively unconscionable, but we decline to hold that the act of incorporation alone is sufficient to sustain a finding of substantive unconscionability.

The trial court also appeared to find the arbitration agreement was substantively unconscionable because the agreement contained no express provision for discovery. We disagree. The agreement incorporated the rules of the AAA, which give the arbitrator the authority "'to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.'" (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1475 (*Roman*).) As to discovery sufficient to vindicate unwaivable statutory rights, in *Armendariz*, the California Supreme Court concluded that by agreeing to arbitrate statutory claims, the employer impliedly agreed to all discovery necessary to adequately arbitrate the claims. (*Armendariz*, *supra*, 24 Cal.4th at pp. 105-106.) The *Roman* court determined that "[t]here appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules." (*Roman*, *supra*, 172 Cal.App.4th at p. 1476.) Thus, whether implied or in fact, the discovery permitted by the expressly referenced AAA rules satisfied the requirements of *Armendariz* for arbitration of statutory claims. In short, the lack of an express provision for discovery did not render the arbitration agreement substantively unconscionable. (See *Sanchez v. Western Pizza Enterprises, Inc*.

20

(2009) 172 Cal.App.4th 154, 177 ["[A]bsence of express provisions requiring a written arbitration award and allowing discovery does not render the arbitration agreement unconscionable. Rather, those terms are implied as a matter of law as part of the agreement."].) Aside from the issues discussed, Lane does not argue that there are any overly harsh or one-sided provisions in the arbitration agreement. Thus, we discern no basis to support a finding of substantive unconscionability. Because the arbitration agreement was not unconscionable, the trial court erred in denying FCM's motion to compel arbitration as to all but the third cause of action.

As FCM moved for an order compelling arbitration under Code of Civil Procedure section 1281.2 and for a stay of proceedings pending arbitration under Code of Civil Procedure section 1281.4, we shall remand for the trial court to issue an order compelling arbitration on Lane's first, second, fourth, fifth, sixth, seventh and eighth causes of action, and to issue an order staying the proceedings on the third cause of action. (See Code Civ. Proc., §§ 1281.2 ["court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists"]; 1281.4 ["If an application has been made . . . for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State . . . , the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."].)

## DISPOSITION

The judgment is affirmed in part and reversed in part; the matter is remanded for further proceedings in light of this opinion.  Each party shall bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

22