Filed 10/31/14  Lateral Link Group v. BLA Schwartz CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| LATERAL LINK GROUP et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BLA SCHWARTZ et al., <br><br> Defendants and Appellants. | B253862 <br><br> (Los Angeles County <br> Super. Ct. No. BC520905) |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed in part and reversed in part.

BLA Schwartz, Irwin B. Schwartz, for Defendants and Appellants.

Kevin R. Allen, for Plaintiffs and Respondents.

Defendants, BLA Schwartz, PC, a Massachusetts professional corporation, and three individual attorneys, Irwin B. Schwartz, John V. Komar, and Nicholas R. Cassie, appeal from an order denying their petition to compel arbitration of attorney malpractice claims brought against them by plaintiffs, Lateral Link Group, LLC ("Lateral Link") and Michael Allen ("Allen"). For the reasons stated below, we affirm the trial court's finding of unconscionability but conclude that the unconscionability may be cured through severance. Accordingly, we affirm in part and reverse and remand with directions to sever from the retainer agreement the clause "except that in no event will the parties be entitled to conduct pre-hearing discovery" and grant defendants' motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Allen owns Lateral Link, a California limited liability company that specializes in legal recruiting. He signed a retainer agreement with defendants to represent him in connection with a "valuation dispute arbitration against T.J. Duane," a Lateral Link member who sought to compel the purchase of his 40 percent ownership interest in the company. The retainer agreement provides that defendants "will at all times act on [Allen's] behalf to the best of [their] ability," and "[a]s part of [their] responsibility and commitment to" Allen "will keep [him] advised of material events concerning the Matter."

The arbitration ended with a final award compelling Lateral Link to purchase Duane's entire interest and make certain cash distributions. The arbitrator also awarded Duane $145,319.57 in attorney fees as a prevailing party against both Lateral Link and Allen. Allen now contends that he should not have been found personally liable for attorney fees and that defendants otherwise provided him and Lateral Link with flawed advice throughout the arbitration. He and Lateral Link filed a complaint asserting that defendants committed legal malpractice and breached their fiduciary duties by failing to properly advise them in connection with the matter.

2

Defendants moved to compel arbitration of plaintiffs' claims based on Allen's retainer agreement with defendants. Page 4 of the retainer agreement contains an arbitration provision entitled "Resolution of Any Disputes Under This Agreement and Arbitration." The provision provides in pertinent part:

"In the event any question or dispute should arise between you and BLA with respect to your retention of BLA or this agreement, you and BLA agree first to attempt in good faith to resolve any such question or dispute. The parties agree they will have acted in good faith, if, at a minimum, the party first raising the question or dispute, within twenty (20) days of when such party knew or should have known of the basis for such question or dispute, sends a letter to the other party outlining the basis for the question or dispute, proposing an answer or solution, and providing not less than twenty (20) days for the other party to respond setting forth its position and any other answer or alternative solution, in writing.

"If the other party responds in writing within that twenty (20) day time period, all of the parties agree they will meet and confer in an attempt to resolve the question or dispute (which meeting can be either face-to-face or by telephone). If the other party does not respond within that time, then the aggrieved party may proceed to arbitration as set forth below.

"The parties do not intend the provisions in the preceding two paragraphs to limit or set forth the exclusive means of attempting to resolve any such questions or disputes informally, but intend them solely to set forth the minimum contacts and discussions required before any party can properly take any such question or dispute to arbitration as per this agreement.

"In the event the parties to this agreement are unable, acting in good faith, to resolve any such question or dispute, they agree to arbitrate the resulting dispute. After exhausting their good faith attempts to resolve their question or dispute informally and in accord with the preceding provisions of this agreement, the aggrieved party will serve on the other party within ten (10) days a written demand for arbitration before the American Arbitration Association, www.adr.org. ("AAA"). The parties agree that their disputes

3

will be resolved by binding arbitration and that all of the arbitration proceedings will take place before AAA in Los Angeles, California, in accordance with the AAA commercial arbitration rules [1] and expedited procedures then in effect, except that in no event will the parties be entitled to conduct pre-hearing discovery."

The agreement did not enumerate or attach the AAA rules to which it referred.

Plaintiffs opposed the motion to compel arbitration, arguing that the malpractice claims were not subject to the arbitration provision. Allen declared that, in signing the retainer agreement, he thought it only covered fee disputes. He had no idea that the arbitration provision related to malpractice claims.

Plaintiffs also asserted the agreement was unenforceable because it was procedurally and substantively unconscionable. Plaintiffs claimed the arbitration provision was procedurally unconscionable because discovery was precluded, the AAA rules were not included, the arbitration provision did not contain language regarding waiver of jury trial and the right to appeal, and the arbitration provision was "'hidden in plain sight' on page four of a six-page fee retainer." Plaintiffs asserted the agreement was substantively unconscionable because it required a pre-filing back-and-forth procedure, it did not expressly vest in the arbitrator the authority to grant injunctive relief, and it precluded pre-hearing discovery.

Defendants replied that Allen is a Harvard-trained lawyer, whose subjective understanding that the arbitration provision was limited to fee disputes did not control. Defendants further argued that the agreement was not unconscionable because it was not procedurally unconscionable and was not substantively unfair.

---

**1**     All further references to rules are to the AAA Commercial Arbitration Rules unless otherwise indicated.

The trial court found that the malpractice action was within the scope of the arbitration provision. The trial court also determined, however, that the provision was unconscionable. The trial court found the retainer agreement "slightly procedurally unconscionable" because it did not attach the applicable AAA rules. The trial court found this procedural unconscionability "somewhat mitigated" by the agreement's reference to the AAA's website. The trial court also found the agreement "highly substantively unconscionable" because it precluded pre-hearing discovery, it contained a pre-filing meet and confer provision whereby the client was required to inform defendants of the nature of the claims, and it did not explicitly grant the arbitrator authority to grant equitable relief. The trial court summarily concluded that the "arbitration clause is not capable of reformation to cure these unconscionable terms due to the extent of the unconscionability contained therein." The trial court accordingly held that the arbitration agreement was unenforceable and denied defendants' motion to compel arbitration.

Defendants filed a timely notice of appeal from the order denying their motion to compel arbitration.

## DISCUSSION

### I. Arbitration and Review Standards

"Under both federal and state law, arbitration agreements are valid and enforceable unless they are revocable for reasons that would render any contract revocable under state law, such as fraud, duress, or unconscionability." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239, citing 9 U.S.C., § 2 and Code Civ. Proc., § 1281.) Motions to compel arbitration thus are akin to requests for specific performance of a contractual agreement. (*Ibid.*) The party seeking to compel arbitration has the burden of proving the existence of a valid arbitration agreement and that the dispute is covered by the agreement. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*); *Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 413-414.) The question whether a valid agreement to arbitrate exists is determined by reference to state law applicable to contracts generally. (*Doctor's*

5

*Assocs. v. Casarotto* (1996) 517 U.S. 681, 686-687; *Engalla*, *supra*, 15 Cal.4th at pp. 971-973.) Doubts as to whether an arbitration clause applies to a particular dispute should be resolved in favor of sending the parties to arbitration. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 176.) If petitioner meets its burden, the respondent has to prove by a preponderance of the evidence any defense to the petition such as unconscionability. (*Engalla*, *supra*, 15 Cal.4th at pp. 959, 972.) If there is no dispute in the evidence, we review the arbitration agreement de novo to determine if it is unconscionable. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469; *Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1527.)

## II. The Scope of the Arbitration Agreement

Plaintiffs first contend that the arbitration agreement does not encompass malpractice claims. We disagree.

"An attorney may ethically, and without conflict of interest, include in an initial retainer agreement with a client a provision requiring the arbitration of both fee disputes and legal malpractice claims." (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1109.) So long as the arbitration provision is unambiguous and properly contextualized (see *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1506-1507), a client properly may be required to arbitrate malpractice claims. These criteria are satisfied in the circumstances presented here, a negotiated retainer agreement between two sophisticated parties.

The arbitration provision is set forth under a heading entitled "Resolution of Any Disputes Under This Agreement and Arbitration." The arbitration provision clearly states that it applies to "any question or dispute" arising between the parties "with respect to your retention of [defendants] or this agreement," and the agreement expressly states both that it pertains to defendants' representation of Allen in the Duane matter and that Defendants would "act on [Allen's] behalf to the best of [their] ability." Even though the arbitration provision does not explicitly refer to "professional services rendered to or for" plaintiffs (*Powers*, *supra,* 54 Cal.App.4th at p. 1106), or "the performance or failure to

6

perform services (including, without limit, claims for breach of fiduciary duty or professional negligence)" (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1304), it is plain from the language of the provision and overall contents and structure of the agreement that malpractice claims arising from the "retention of [defendants]" and their alleged failure to "act on [Allen's] behalf to the best of [their] ability" are within its ambit, particularly where both parties to the agreement are sophisticated entities. Unlike the broadly worded arbitration clause in *Lawrence v. Walzer & Gabrielson*, *supra*, 207 Cal.App.3d at p. 1506, which was found to be "limited to disputes concerning financial matters such as fees and costs" because the agreement in which it appeared was "devoted almost exclusively to financial matters," the arbitration provision here is included in an agreement that addresses the scope of defendants' representation, conflict of interest issues, and termination procedures in addition to financial matters.

For all of these reasons, we conclude that the malpractice action is within the scope of the arbitration provision.

### III. The Signatories

Plaintiffs are also incorrect that Lateral Link is not bound by the arbitration agreement because it did not sign the retainer agreement. "A nonsignatory can be compelled to arbitrate when a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to arbitrate as well. [Citation.] Additionally, a nonsignatory can be compelled to arbitrate when it is suing as a third-party beneficiary of the contract containing the arbitration clause . . . ." (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1240.) Moreover, a nonsignatory plaintiff can be compelled to arbitrate claims which are based on or inextricably intertwined with a contract containing the arbitration clause. (*Id*. at p. 1241.) In this case, Allen, who is principal owner of Lateral Link, signed a retainer agreement for representation in the underlying arbitration. The complaint is predicated on allegations that both Lateral Link and Allen were injured by defendants' professional negligence in the underlying arbitration. Thus, the claims are

7

inextricably intertwined with the retainer agreement, which contains the arbitration clause. Accordingly, plaintiffs cannot prevail on this theory.

## IV. Unconscionability

The question remains whether the trial court properly determined the arbitration provision was unconscionable. "Unconscionability consists of both procedural and substantive elements," both of which must be present to warrant invalidation of a contract. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*); *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) The oppression factor considers any ""inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice." [Citations.] While "[s]urprise" refers to the extent to which the supposedly agreed upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms. [Citations.]"" (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532.) The substantive element addresses the existence of overly harsh or one-sided terms. (*Pinnacle, supra*, 55 Cal.4th at p. 246; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) "'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.'" [Citation.]'" (*Pinnacle, supra*, 55 Cal.4th at p. 246; see also *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1561.) "'Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.' [Citation.] Agreements to arbitrate must contain at least '"a modicum of bilaterality"' to avoid unconscionability. [Citation.] When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite

8

degree of mutuality." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 657; accord *Armendariz, supra*, 24 Cal.4th at pp. 117-118.)

The procedural and substantive elements "'need not be present in the same degree' and are evaluated on "'a sliding scale.'" [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle, supra,* 55 Cal.4th at p. 247, quoting *Armendariz*, *supra*, 24 Cal.4th at p. 114.) We address substantive and procedural unconscionability in turn.

## A. Substantive Unconscionability

As previously noted, the substantive element of unconscionability focuses on overly harsh or one-sided terms. (*Pinnacle, supra*, 55 Cal.4th at p. 246; *Armendariz*, *supra*, 24 Cal.4th at p. 114.) We agree with plaintiffs that the trial court correctly concluded that the arbitration provision was substantively unconscionable.

The arbitration provision precludes pre-hearing discovery in an extremely one-sided manner favoring defendants. Section 1283.05, subdivision (a) of the Code of Civil Procedure (and part of the California Arbitration Act) provides: "After the appointment of the arbitrator . . ., the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures . . . as if the subject matter of the arbitration were pending before a superior court. . . ." This statute does not preclude parties to arbitration agreements from agreeing to something less than the full panoply of discovery provided for in civil actions. (*Armendariz, supra*, 24 Cal.4th at p. 105; *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 404 (*Sanchez*).)

One of the purposes of arbitration is to create "a streamlined procedure" for resolving disputes. (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 983.) Limiting discovery is one way to achieve streamlining. (*Ibid*.) And although state law concerning arbitration clauses currently is in flux following the United States Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, 131 S.Ct. 1740

(*Concepcion*), it is clear that "'efficient, streamlined procedures' is a fundamental attribute of arbitration with which state law may not interfere." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1140, quoting *Concepcion*, *supra*, 563 U.S. ___, 131 S.Ct. at 1749.)[2] That said, however, our state Supreme Court has clarified that "courts may continue to apply unconscionability doctrine to arbitration agreements," so long as they do not "mandate procedural rules that are inconsistent with fundamental attributes of arbitration" (*id.* at p. 1145), on a "categorical" basis. (*Tiri v. Lucky Chances, Inc.*, *supra*, 226 Cal.App.4th at p. 248; see also *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 33.)

We conclude that the clause barring pre-hearing discovery of any kind is substantively unconscionable in the context of this particular case. The clause wholly precludes pre-hearing discovery of any kind under any circumstances whatsoever. Although plaintiffs are entitled to their client files, the prohibition of discovery denies them access to other essential documents and witnesses. Defendants, who are likely to be in possession of the bulk of such documents and records, are significantly less affected by this prohibition than plaintiffs. The arbitration provision thus is unconscionable because it severely curtails plaintiffs' ability to pursue their professional negligence claims against defendants without appreciably restricting defendants' ability to defend against those claims. (See *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 512-513.) We find it telling that at least some discovery was permitted in all of the cases cited by the parties. (*Cf. Armendariz*, *supra*, 24 Cal.4th at p.106 [concluding that in the context of vindicating a statutory right, "some discovery is necessary" and a party asserting such a right is "at least entitled to discovery sufficient to adequately arbitrate [the] claim, including access to essential documents and witnesses, as determined by the arbitrator. . . ."].)

---

**2** We note that neither plaintiffs nor defendants mentioned *Concepcion* in their briefing or cited to the sizeable body of recent state case law clarifying and implementing *Concepcion*'s holding.

10

The one-sided nature of the discovery prohibition is compounded by the good faith and meet-and-confer requirements also included in the arbitration provision. The meet-and-confer procedures require plaintiffs to disclose the basis of any claim against defendants in the event of a question or dispute. Plaintiffs, having been required to disclose their theories of malpractice, are then precluded from discovering any information which might assist them in proving their claims in the ensuing arbitration. Defendants equally are obligated to comply with the meet-and-confer procedures, vesting them with the requisite bilaterality, but defendants are substantially more insulated from the consequences of the informational asymmetry that will result. (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 89.)

Under the circumstances presented by this case, the trial court correctly concluded the arbitration provision was "highly" substantively unconscionable in light of the pre-hearing discovery exclusion as compounded by the meet-and-confer requirements.[3] We are not persuaded that the meet-and-confer procedures, standing alone, are sufficiently one-sided and harsh to independently support a finding of substantive unconscionability.

**B. Procedural Unconscionability**

Plaintiffs assert that defendants' failure to attach a copy of the AAA rules to the agreement rendered the arbitration provision procedurally unconscionable. A number of cases have concluded that the failure to provide a copy of applicable arbitration rules supports a finding of procedural unconscionability. (See *Trivedi v. Curexo Tech. Corp.* (2010) 189 Cal.App.4th 387, 393 [failure to attach a copy of the AAA rules was procedurally unconscionable]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146 [failure to provide a copy of relevant arbitration rules is procedurally

---

**3** The parties also dispute whether the arbitration agreement is substantively unconscionable because it does not provide for equitable and injunctive remedies. Given the high degree of substantive unconscionability with respect to what is actually stated in the agreement, we need not resolve this issue. We note only that the arbitration agreement does not expressly exclude the remedies and certain provisional remedies are available under section 1281.8.

11

unconscionable when considered with other factors such as length and small typeface]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721 [employee dispute resolution policy incorporated but failed to attach arbitration rules]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406-1407 [reference to Better Business Arbitration rules without attaching them to the contract for the customer to review supported finding of unconscionability].)

This Division recently considered the issue of failing to attach the arbitration rules in *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676 (*Lane*). "We agree[d] that the failure to attach the arbitration rules could be a factor in support of a finding of procedural unconscionability, but disagree[d] that the failure, by itself, is sufficient to sustain a finding of procedural unconscionability." (*Id*. at p. 690.) *Standing alone,* the failure to attach AAA rules does not support a procedural unconscionability finding. (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472.)

Where the rules are easily accessible to the parties and are available on the Internet, there can be no surprise. (*Lane*, *supra*, 224 Cal.App.4th at p. 691, citing *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6.) In this case, the retainer agreement referenced the AAA website. Furthermore, Allen, who is a Harvard-educated attorney and owns a legal placement firm, certainly would have had the ability to locate and retrieve a copy of the AAA rules from the Internet. (See *Dotson*, *supra*, 181 Cal.App.4th at p. 981.)

Under the circumstances, we must determine if there is something in addition to the mere failure to attach AAA rules which would support a finding of procedural unconscionability. Plaintiffs assert additional evidence of procedural unconscionability may be found in the pre-hearing prohibition on discovery. This is because the limitation alters the procedures in the AAA Commercial Rules. As our discussion above reflects, limitations on discovery generally are considered in the context of substantive as opposed to procedural unconscionability. (See *Armendariz, supra*, 24 Cal.4th at p. 105; *Dotson*, *supra*, 181 Cal.App.4th at p. 983; *Ontiveros, supra,* 164 Cal.App.4th at p. 512.)

We nonetheless agree with plaintiffs that the language in the arbitration provision which indicates that AAA Commercial Rules are applicable yet in the very same sentence entirely eliminates discovery supports a finding of procedural unconscionability. The AAA rules contain a number of provisions giving arbitrators the right to manage information, control discovery and conduct investigations to achieve the goals of arbitration, i.e., to have fair, efficient and economic resolutions of disputes. Those provisions include rules 21[4], 22[5], 23[6] and 36.[7] It is unclear from the arbitration

---

[4]      Rule 21 states: "(a) At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person or by telephone. [¶] (b) At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. . . ."

[5]      Rule 22 entitled "Pre-Hearing Exchange and Production of Information" states: "(a) Authority of arbitrator. The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses. [¶] (b) Documents. The arbitrator may, on application of a party or on the arbitrator's own initiative: [¶] i. require the parties to exchange documents in their possession or custody on which they intend to rely; [¶] ii. require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them; [¶] iii. require the parties, in response to reasonable document requests, to make available to the other party documents, in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and [¶] iv. require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them."

agreement which, if any, of these rules would still be in effect because the agreement eliminates all discovery. It is questionable how information necessary to prosecute a claim would be gathered or if the arbitrator would retain any authority to order discovery or manage the information. As a consequence, even if plaintiffs reviewed the arbitration rules on the AAA website, there is an element of "surprise" as to which rules would actually apply to the dispute. "The failure to attach a copy of arbitration rules could be a factor supporting a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration." (*Lane*, *supra*, 224 Cal.App.4th at p. 690.) We find that the failure would result in surprise here and therefore conclude that the agreement is procedurally unconscionable. (See *Mayers v. Volt Management Corp.* (2012) 203 Cal.App.4th 1194, 1208-1209; *Lane*, *supra*, 224 Cal.App.4th at p. 690.)

**V. Waiver**

Defendants assert that plaintiffs have waived the right to challenge the arbitration provision by participating in an arbitration to resolve a fee dispute. Defendants' motion

---

**6**     Rule 23 entitled "Enforcement Powers of the Arbitrator" states: "The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation: [¶] (a) conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality; [¶] (b) imposing reasonable search parameters for electronic and other documents if the parties are unable to agree; [¶] (c) allocating costs of producing documentation, including electronically stored documentation; [¶] (d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and [¶] (e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

**7**     Rule 36 provides: "An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment."

14

to compel arbitration did not raise the waiver issue. Instead, defendants asserted that the trial court should stay the action due to the fee arbitration. As a consequence, the waiver argument, which has been raised for the first time on appeal, is forfeited. (*People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 644-645.)

In any event, "waivers are not to be lightly inferred and the party seeking to establish waiver bears a heavy burden of proof." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) There is no question that plaintiffs arbitrated a fee dispute with defendants. However, plaintiffs' arbitration of a fee dispute is not tantamount to a waiver of their right to challenge the legality of the arbitration provision as applied to their legal malpractice lawsuit. The fact that the parties may have chosen to save money, time, and efforts by resolving a minor fee dispute in arbitration does not mean that any remaining issues arising out of the attorney-client relationship necessarily may be resolved only by contractual arbitration. There is no indication that plaintiffs intended to relinquish their rights to pursue unrelated claims in court by arbitrating the fee dispute.

## VI. Severance

Having found, consistent with trial court's decision, that the arbitration provision is both procedurally and substantively unconscionable, the only remaining question is whether the court abused its discretion in determining the parties' agreement was "not capable of reformation to cure these unconscionable terms due to the extent of the unconscionability contained therein."

Civil Code section 1670.5, subdivision (a), permits a court that finds "the contract or any clause of the contract to have been unconscionable at the time it was made" to (1) "refuse to enforce the contract"; (2) "enforce the remainder of the contract without the unconscionable clause"; or (3) "so limit the application of any unconscionable clause as to avoid any unconscionable result." "Comment 2 of the Legislative Committee comment on section 1670.5, incorporating the comments from the Uniform Commercial Code, states: 'Under this section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single

15

clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results.' (Legis. Com. com., 9 West's Ann. Civ. Code (1985 ed.) foll. § 1670.5, p. 494 (Legislative Committee comment).)" (*Armendariz*, *supra*, 24 Cal.4th at p. 122.) In other words, the statute gives "a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Ibid.*) Whether unconscionability or other illegality permeates an agreement turns on the extent to which the "central purpose of the contract is tainted with illegality." (*Id.* at p. 124.) "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Ibid.*)

Here, the prohibition on discovery that renders the arbitration provision unconscionable is contained in a single clause of a single sentence of the multi-paragraph provision: "The parties agree that their disputes will be resolved by binding arbitration and that all of the arbitration proceedings will take place before AAA in Los Angeles, California, in accordance with the AAA commercial arbitration rules and expedited procedures then in effect, *except that in no event will the parties be entitled to conduct pre-hearing discovery*." It does not permeate the entirety of the parties' agreement, which spans multiple pages and governs numerous aspects of the parties' relationship. Nor does unconscionability permeate even the shorter arbitration provision, which aside from the discovery bar (as compounded by the meet-and-confer requirements) bears the hallmarks of bilaterality. In other words, there is a "single provision [we] can strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz*, *supra*, 24 Cal.4th at p.124.) Doing so would "prevent [the] parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement" while "conserv[ing] a contractual relationship," or, in more simple terms, furthering the interests of justice. (*Id*. at pp. 123-124.)

16

Accordingly, we conclude that the trial court abused its discretion when it found the agreement incapable of revision.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed in part and reversed in part. We reverse and remand with directions to the trial court to sever from the retainer agreement the clause "except that in no event will the parties be entitled to conduct pre-hearing discovery" and grant defendants' motion to compel arbitration. Each party is to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

17