Filed 10/6/25

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CARLOS VILLALOBOS, | B333556 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. Nos. 22STCV21353 and 22STCV33047 |
| MAERSK, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Lawrence P. Riff, Judge. Affirmed.

Greenberg Traurig, Mark D. Kemple and Michael A. Wertheim for Defendants and Appellants Maersk, Inc. and Maersk Warehousing & Distribution Services USA LLC.

Hill Farrer & Burrill, E. Sean McLoughlin and Clayton J. Hix for Defendant and Appellant Simplified Labor Staffing Solutions Inc.

Lavi & Ebrahimian, Joseph Lavi, Jordan D. Bello, Vincent Granberry and Will Tran for Plaintiff and Respondent.

_____

**SUMMARY**

"Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability." (*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209.) This is a well-established principle of arbitration law, applied in both state and federal cases. (E.g., *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 (*First Options*) ["Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."].)

Here we hold, in the context of a mandatory arbitration agreement between an employer and an hourly worker, that the incorporation of the rules of an arbitration provider – without expressly specifying in the parties' agreement that under those rules the arbitrator will decide the scope and validity of the arbitration agreement – is not clear and unmistakable evidence of the parties' intent to have those issues decided by the arbitrator. Absent unusual circumstances, an employer who intends to delegate issues of arbitrability to the arbitrator must express that intent in the arbitration agreement itself. Anything less is not clear and unmistakable evidence that *both* parties understood and intended that the arbitrator would decide arbitrability questions.

We also find no error in the trial court's ruling that plaintiff's claim for waiting time penalties (Lab. Code, § 203) was not arbitrable to the extent it was based on his minimum wage claims. Nor was there error in the court's conclusion that no part of plaintiff's PAGA claim (Private Attorneys General Act, Lab. Code, § 2698 et seq.) was arbitrable.

2

Accordingly, we affirm the trial court's ruling in its entirety.

**FACTS**

**1.  Overview**

Plaintiff Carlos Villalobos was employed by Simplified Labor Staffing Solutions, Inc., a temporary staffing services company that supplies labor and staffing to its customers. Simplified Staffing placed plaintiff with Maersk Warehouse and Distribution Services, where he worked first as a materials handler and later as a forklift operator.  Simplified describes Maersk as "a warehousing and logistics company that warehouses goods in California that originate outside California and processes logistics for customers all over the United States."

On June 30, 2022, plaintiff filed a class action alleging multiple wage and hour claims under the Labor Code, and an unfair competition claim, against defendant Maersk, Inc.  The first amended complaint filed on October 28, 2022, identified Maersk, Inc., Damco Distribution Services Inc. (now known as Maersk Warehouse and Distribution Services USA LLC), and Simplified Labor Staffing as plaintiff's employers.

On October 7, 2022, plaintiff also filed a separate representative action against Maersk, Inc. for civil penalties under PAGA on behalf of himself and other current and former employees.

The two cases were later consolidated.

The parties to the arbitration agreement are plaintiff and Simplified Labor Solutions; they do not dispute the rights of the Maersk parties to enforce the arbitration agreement.

3

## 2. The Documents Constituting the Parties' Arbitration Agreement

The arbitration agreement in this case consists of two separate documents:  a May 11, 2020 "Employee Agreement to Arbitrate" (the employee agreement) and a "Notice to Employees About Our Mutual Arbitration Policy" (the arbitration policy), both requiring binding arbitration of all disputes with the company that relate in any way to plaintiff's employment.

In the first document (the "employee agreement"), plaintiff acknowledged receiving and reviewing a copy of the second document (the "arbitration policy") which was a condition of his employment:  "I acknowledge that I have received and reviewed a copy of the Company's Mutual Arbitration Policy ('MAP') . . . and I understand that the MAP is a condition of my employment." In addition to agreeing to final and binding arbitration of disputes related to his employment or termination of employment and forgoing any right to a jury trial, plaintiff also agreed to "forego any right to bring claims on a class or collective basis."

In the employee agreement, plaintiff further agreed "that such arbitration will be conducted before an arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act [FAA, 9 U.S.C. §§ 1 et seq.] and the applicable procedural rules of the American Arbitration Association ('AAA'), which I have been provided an opportunity to request and review."  The employee agreement did not state which set of AAA procedural rules were applicable or where those rules could be found.

The second document (the arbitration policy) "explains the procedures, as well as how the arbitration policy works as a whole."  The arbitration policy is "governed solely by the Federal

4

Arbitration Act," but "[i]f for any reason the FAA is deemed inapplicable," the arbitration policy "will . . . be governed by the applicable state arbitration statutes."

The arbitration policy states: "The Employment Arbitration Rules of the American Arbitration Association ('AAA') in place at the time of the dispute will govern the procedures to be used in arbitration, unless you and the Company agree otherwise in writing. The current version of those Rules is available for you to review at www.adr.org and you may also request a copy from the Company."

The arbitration policy explains that "[t]he arbitrator's responsibility is to determine whether the Company's policies and procedures and applicable law have been complied with in the matter submitted for arbitration." In its conclusion, the policy repeats that, "If you would like to receive or review a copy of the AAA Rules in either English or Spanish, please request a copy or visit the website www.adr.org."

Nothing in either document stated that the arbitrator had the power to rule on the existence, scope or validity of the arbitration agreement.

### 3. The Motion To Compel Arbitration

On May 31, 2023, the three defendants filed a joint motion to compel arbitration. They sought to compel arbitration of plaintiff's individual claims; to dismiss or strike plaintiff's class allegations; and to dismiss any non-individual PAGA claims and stay further judicial proceedings pending completion of the arbitration. Defendants contended the agreement was governed by the FAA; required plaintiff's class allegations to be dismissed or stricken; required arbitration of plaintiff's individual claims,

including his individual PAGA claim; and required that any dispute about arbitrability was for the arbitrator to decide.

Defendants' motion was accompanied by a declaration from Maria Diaz, the director of human resources at Simplified Labor Staffing. Ms. Diaz explained the business of Simplified Labor Staffing and Maersk Warehouse and Distribution Services. She submitted exhibits from plaintiff's personnel file, showing his agreement to arbitrate, and Simplified Labor Staffing's mutual arbitration policy which plaintiff acknowledged in the arbitration agreement. A copy of the current AAA Employment Arbitration Rules was also filed with the motion.

4.     **Plaintiff's Opposition**

Plaintiff opposed the motion. His primary argument was that he was exempt from the FAA because his work involved loading, unloading and organizing cargo traveling in interstate commerce. (9 U.S.C. § 1 [FAA does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"].) Plaintiff argued that under California law, his Labor Code claims for unpaid wages are exempt from arbitration under Labor Code section 229. He contended that because the FAA does not apply, his PAGA claims could proceed in court under California law. He asked for an evidentiary hearing if defendants were to argue that plaintiff did not handle goods traveling in interstate commerce.

In support of his argument that he was exempt from the FAA, plaintiff provided an extensive description of his job duties as a materials handler and later as a forklift operator at Maersk's Santa Fe Springs warehouse location. Plaintiff also submitted

6

information describing Maersk's warehousing, fulfillment and distribution services in the United States.

**5.    Defendants' Reply**

Defendants' reply contended that the validity and enforceability of the arbitration agreement and the scope of the obligation were issues clearly and unmistakably delegated to the arbitrator, because the parties agreed to be governed by the AAA rules.  Those rules specify that the arbitrator has the power to rule on his or her jurisdiction, including the existence, scope or validity of the arbitration agreement.  Defendants pointed out that the California Arbitration Act would apply if the FAA did not, and plaintiff did not challenge the delegation clause and did not suggest the agreement was unconscionable.  As a final argument, defendants contended that in any event plaintiff did not prove his claimed exemption from the FAA.

**6.    The Trial Court's Ruling**

The trial court granted defendants' motion in part and denied it in part.

First, the court addressed defendants' contention that the parties delegated resolution of enforcement issues to the arbitrator.  The court found there was not a clear and unmistakable agreement to delegate enforceability issues to the arbitrator, citing cases holding (among other points) that in the employment context, an agreement incorporating by reference an arbitration organization's standardized rules did not meet the clear and unmistakable test.  (E.g., *Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 305 (*Beco*).)

Second, the court held that, notwithstanding a clear and unmistakable delegation clause, the court must decide whether the FAA applies, citing *New Prime Inc. v. Oliveira* (2019) 586

7

U.S. 105, 111 ["a court should decide for itself whether §1's 'contracts of employment' exclusion applies before ordering arbitration. After all, to invoke its statutory powers under §§3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§1 and 2."].

The trial court then turned to the substance of plaintiff's opposition to arbitration, ultimately concluding plaintiff "was among a class of workers engaged in foreign or interstate commerce," and the FAA did not apply to the agreement; "[t]he California Arbitration Act (CAA) and other provisions of California law apply instead."[1]

Third, the court found that under Labor Code section 229, if a cause of action seeks to collect due and unpaid wages pursuant to sections 200 through 244, the action may be maintained in court despite an agreement to arbitrate. Thus plaintiff could maintain in court his claim for nonpayment of minimum wages; his other claims (missed meal and rest breaks, overtime, and so on) were outside the purview of section 229.

Fourth, the trial court agreed with plaintiff that Labor Code section 229 also shielded from arbitration his claim for waiting time penalties, to the extent that claim was based on failure to pay minimum wages. (The court observed that "[a]s a practical matter, . . . without first deciding whether Defendants failed to pay [plaintiff] minimum wages (non-arbitrable Count 1), the arbitrator cannot possibly decide whether Defendants ought to be penalized for the failure to *timely* pay [plaintiff] minimum wages.")

_____

[1] Defendants no longer contend on appeal that the FAA governs the parties' agreement.

8

Fifth, the court concluded that under California law, no part of plaintiff's PAGA claim was arbitrable, stating that "[s]tate law rules that are preempted by the FAA are nevertheless good law in cases that do not involve the FAA."

Thus, the court denied defendants' motion to compel plaintiff to arbitrate his minimum wage claim, his waiting penalties claim to the extent it is based on his minimum wage claim, and the PAGA action. The court granted defendants' motion to compel arbitration of plaintiff's other wage and hour claims and his unfair competition claim (counts 2-6, 7 (in part) & 8). The court denied defendants' motion to dismiss the non-individual PAGA claims, granted defendants' motion to dismiss the putative class claims, and granted defendants' motion to stay proceedings.

Defendants filed a timely appeal.

## DISCUSSION

Defendants contend the trial court erred "by not enforcing the parties' contractual delegation of the *scope* of claims" to the arbitrator. In any event, defendants say, the court erred in its rulings that the waiting time penalties claim and the PAGA action were not arbitrable.

We find no merit in any of defendants' claims of error and affirm the trial court's order.

### 1. The Delegation Issue

#### a. The pertinent legal principles

The basic principles are described in many cases. The question of " 'who decides' " arbitrability "is a matter of party agreement." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 243 (*Sandquist*).) "As the United States Supreme Court has explained . . . , '[j]ust as the arbitrability of the merits of a

9

dispute depends upon whether the parties agreed to arbitrate that dispute [citations], so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.' " (*Ibid.,* quoting *First Options, supra,* 514 U.S. at p. 943.)

" 'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' " (*Sandquist,* 1 Cal.5th at p. 244, quoting *First Options, supra,* 514 U.S. at p. 944.) But *First Options* pointed out that the high court had (years earlier) "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*First Options*, at p. 944*,* citing cases.)[2]

---

[2] The Supreme Court cited two of its earlier decisions, both arising in the context of collective bargaining agreements. In *AT&T Technologies, Inc. v. Communications Workers of America et al.* (1986) 475 U.S. 643, the issue was "whether a court asked to order arbitration of a grievance filed under a collective-bargaining agreement must first determine that the parties intended to arbitrate the dispute, or whether that determination is properly left to the arbitrator." (*Id.* at p. 644.) After reciting the "first principle" that arbitration is a matter of contract to which a party must agree (*id.* at p. 648), the court stated: "The second rule, which follows inexorably from the first, is that the question of arbitrability -- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably

10

*First Options* elaborated: "In this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' -- for in respect to this latter question the law reverses the presumption." (*First Options, supra,* 514 U.S. at pp. 944-945.) The high court found that "this difference in treatment is understandable," explaining: "The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration, [citation], one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter. [Citation.] On the other hand, the former question -- the 'who (primarily) should decide arbitrability' question -- is rather arcane. A party often might not focus upon that question or upon the significance of having

provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (*Id.* at p. 649.) *AT&T Technologies* in turn cited *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574. In *Warrior & Gulf*, the high court noted: "Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose." (*Id.* at p. 583, fn. 7.)

arbitrators decide the scope of their own powers. [Citations.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*Id.* at p. 945.)

The principle requiring clear and unmistakable evidence that the parties agreed that the arbitrator would decide arbitrability likewise has a decades-long provenance in California, dating back to 1957. In *McCarroll v. Los Angeles County Dist. Council of Carpenters* (1957) 49 Cal.2d 45, the Supreme Court said this: "The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract. . . . [¶] Of course, even when the parties have conferred upon the arbiter the unusual power of determining his own jurisdiction, the court cannot avoid the necessity of making a certain threshold determination of arbitrability, namely, whether the parties have in fact conferred this power on the arbiter. . . . [¶] It may be that leaving to an arbiter the question of arbitrability is a desirable procedure from the point of view of harmonious labor relations [citation], although some have expressed fear that the procedure may be used to bring about unbargained for changes in the relations of the parties. [Citation.] Whatever the merits of the procedure, we think it sufficiently outside the usual understanding of the relations of court and arbiter and their respective functions *to assume that the parties expected a court determination of arbitrability unless*

12

*they have clearly stated otherwise.*" (*Id.* at pp. 65-66, italics added.)

Since *McCarroll*, many California cases have stated the "clear and unmistakable" rule. (E.g., *Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1190 (*Gilbert*) ["California common law is settled that parties to an arbitration contract must clearly and unmistakably agree that arbitrators will have power to decide their own jurisdiction; otherwise the question of whether arbitrators have jurisdiction is for the court" (citing cases)]; *ibid.* ["California appellate courts . . . imported the rule either from each other, or from [*AT&T Technologies*], or both."].)

*Gilbert* also observes, discussing *First Options,* that "it is not enough that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own jurisdiction. Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue. . . . [R]eaders should take note of the *First Options* court's use of language that indicates the desideratum that parties actually *think* about the idea of replacing the judge with an arbitrator as far as the threshold issue of arbitrability is concerned." (*Gilbert, supra,* 174 Cal.App.4th at pp. 1191-1192.)

A clause in an arbitration agreement providing that the arbitrator will decide issues of arbitrability is sometimes referred to as the delegation clause: " '[T]he "[p]arties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement." ' " (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891-892 (*Aanderud*).)

13

" 'There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability.' [Citations.] The 'clear and unmistakable' test reflects a '*heightened* standard of proof' that reverses the typical presumption in favor of the arbitration of disputes." (*Id.*, at p. 892.)

This case concerns only the "clear and unmistakable" requirement. No issues of unconscionability are presented.

**b.    The issue: incorporating a body of rules to confer upon arbitrators the power to decide their own jurisdiction**

California and federal cases reach varying conclusions when confronted with an arbitration agreement that does not expressly delegate arbitrability issues to the arbitrator, but incorporates AAA arbitration rules that *do* expressly provide the arbitrator will decide those issues. All of these cases may be distinguished on their facts, in one way or another, from each other and from this case. For cases concluding incorporation of AAA (or other provider) arbitration rules was clear and unmistakable evidence of delegation to the arbitrator, see, e.g., *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 549-550, 553, 557 (*Dream Theater*) [commercial dispute involving an asset purchase agreement with comprehensive dispute resolution provisions; incorporation of AAA Commercial Arbitration Rules sufficed, "even without a recital in the contract"]; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1116, 1123 (*Rodriguez*) [reiterating *Dream Theater*'s conclusion; contract for remediation and repair work on

14

the plaintiffs' home providing for arbitration under AAA's Construction Industry Arbitration Rules]; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1441-1443 [citing and quoting *Dream Theater* and *Rodriguez* with approval; JAMS rules authorized the arbitrator to make the final decision on what issues were arbitrable]; *Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 353-354 [parties' agreement in a retail installment contract to arbitrate their disputes under a specifically designated set of rules, "which in turn provide that the arbitrator shall decide whether the parties' arbitration agreement permits class arbitration, is ' "clear and unmistakable" ' evidence that the parties intended to delegate the resolution of that question to the arbitrator"]; see also *Aanderud, supra,* 13 Cal.App.5th at p. 892 [arbitration agreement contained an explicit delegation clause, but court also stated that incorporation of arbitration rules giving the arbitrator power to decide arbitrability issues "may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues"].)

Other cases have found that incorporation by reference in the employment or consumer context did *not* meet the clear and unmistakable test. (See, e.g., *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 775 (*Ajamian*) [employment case raising threshold issue of whether the arbitration provision itself was unconscionable]; *Beco, supra,* 86 Cal.App.5th at p. 305 [employment case finding incorporation by reference did not meet the clear and unmistakable test "especially under the facts here"]; *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1052 (*Gostev*) [consumer contract with mobile gaming platform; incorporation by reference of AAA rules "does not provide clear

15

and unmistakable evidence the parties intended to delegate to the arbitrator the question of unconscionability in this case"]; *Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 607 (*Mondragon*) [employment case; even where incorporation of arbitration rules "may otherwise constitute a clear and unmistakable delegation, the rules do not apply where the arbitration agreement creates a carve-out for certain claims and the arbitrability dispute is whether the carve-out covers the claims at issue"].)

### c.     Contentions and conclusions

We are persuaded, in the circumstances of this case, that the incorporation of AAA rules did not constitute clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator.

The specific issue here is whether the "clear and unmistakable" rule is met in circumstances where, at the end of a three-step process, an employee can discover a point known to his employer from the outset:  that he was agreeing that the arbitrator would decide his or her own jurisdiction.  By a "three-step process," we mean this:  The employee signs the "employee agreement to arbitrate"(step one), which has no clause delegating arbitrability issues to the arbitrator.  Instead, the employee agreement, while stating that arbitration will be conducted under "the applicable procedural rules" of the AAA, "which I have been provided an opportunity to request and review," does not identify the applicable rules or where they may be found, and refers to a second document (the mutual arbitration policy).  This second document (step 2), which likewise has no clause delegating arbitrability issues to the arbitrator, specifies that the Employment Arbitration Rules of the AAA in place at the time of

16

the dispute "will govern the procedures to be used in arbitration," and those rules are available "at www.adr.org and you may also request a copy from the Company." So, to find out that the arbitrator will decide arbitrability, the employee must take step 3, which will result in his access (as of the time this dispute arose) to a 26-page document with 48 rules, one of which will tell him that the arbitrator has the power to rule on his or her own jurisdiction.

In these circumstances, it is obvious that only one of the parties unmistakably intended or knew it was supplanting the judge who ordinarily decides arbitrability issues with the arbitrator. And yet, the *raison d'etre* of the "clear and unmistakable" rule is that "the law is solicitous of the parties actually *focusing* on the issue," that is, "the desideratum that parties actually *think* about the idea of replacing the judge with an arbitrator as far as the threshold issue of arbitrability is concerned." (*Gilbert, supra,* 174 Cal.App.4th at p. 1192; see *First Options, supra,* 514 U.S. at p. 945.) It is hard to avoid concluding that the "desideratum" of "actually focusing" on the issue is entirely missing here.

We turn to defendants' position that we should nonetheless reverse the trial court's delegation ruling. Defendants' overall argument is that the trial court "applied the wrong test." We disagree.

Defendants first point out that, when courts decide " 'whether the parties agreed to arbitrate a certain matter (including arbitrability),' " courts generally " 'should apply ordinary state-law principles that govern the formation of contracts.' " (*Sandquist, supra,* 1 Cal.5th at p. 244, quoting *First Options, supra,* 514 U.S. at p. 944.) These "ordinary state-

17

law principles" are that one who signs a contract is deemed to assent to all its terms; an arbitration clause is binding on a party even if the party never actually read it; and doubts about whether a question is arbitrable are resolved in favor of arbitration. Defendants say plaintiff's "signature alone is his objective manifestation of his intent to assent, and is all that is required to establish his mutual assent to be bound by the terms of the Agreement." Defendants then contend the words incorporating the AAA rules are clear and unmistakable, citing *Rodriguez, Dream Theater, Brinkley,* and others, as well as federal cases.

We are not persuaded. Conspicuous in its omission from defendants' recitation is any reference to *First Options*, or to *Gilbert* or *Gostev* or *Ajamian,* where they tell us: " ' "*[I]t is not enough* that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own jurisdiction. Rather, the result must be clear and unmistakable, *because the law is solicitous of the parties actually focusing on the issue.* Hence silence or ambiguity is not enough." ' " (*Gostev, supra,* 88 Cal.App.5th at p. 1052, italics added; see also *Ajamian, supra,* 203 Cal.App.4th at p. 791 [same]; *Gilbert, supra,* 174 Cal.App.4th at pp. 1191-1192 [same].) As *Gilbert* tells us, correctly, "*First Options* specifically *contrasted* (a) 'ordinary state-law principles that govern the formation of contracts' with (b) the clear and unmistakable rule, which the *First Options* court described as an 'important qualification' in deciding the question of whether arbitrators have power to decide their own power." (*Gilbert, supra,* 174 Cal.App.4th at p. 1191.) Defendants ask us, in effect, to ignore this principle. We will not.

18

Next, defendants assert that the trial court conflated the question whether the language of the agreement was clear and unmistakable "with whether the delegation clause was procedurally unconscionable." Thus defendants assert, without reference to the record, that "the trial court engaged in an analysis of unasserted procedural unconscionability – specifically, whether the terms were 'hidden' or a 'surprise' to an unsophisticated reader." Defendants further refer to procedural unconscionability as "the argument raised by the trial court *sua sponte*," and claim "the trial court addressed only the procedural unconscionability of this defense" (and not substantive unconscionability), and "its discussion of it is wholly without support."

Defendants do not cite the record because they cannot. The trial court's ruling is entirely devoid of any discussion of unconscionability, in any context, and rightly so, since plaintiff has never contended the arbitration agreement was unconscionable. As we stated at the beginning, there is no issue of unconscionability in this case. Defendants have made up a specious argument.

Defendants' final argument on the delegation issue consists of a discussion distinguishing *Ajamian, Beco, Gostev,* and *Mondragon* – cases finding that incorporation by reference, all of them in the employment or consumer context, did *not* meet the clear and unmistakable test (see *ante,* at pp. 15-16). Defendants say those cases involve a different issue: delegation of the power to decide "whether the contract granting the arbitrator any power to act is a contract at all," whereas here it is undisputed the parties "have an enforceable arbitration agreement in the first instance" and the delegation issue involves "the *scope* of claims

19

subject to the arbitrator's unquestioned jurisdiction." This assertion is wrong, too.

Defendants seem to have lost sight of the language in the AAA rule, which gives the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to *the existence, scope or validity* of the arbitration agreement." (Italics added.) For one thing, the cases in question did *not* involve whether the arbitration agreement "is a contract at all." And we fail to see why the efficacy of the delegation – or lack thereof – would differ depending on which jurisdictional issue – scope or validity – is contested.

Nor do we find the factual differences in these four cases determinative, or helpful. Thus, for example, in *Ajamian* there was an additional reason to find the reference to AAA rules insufficient: the employer had the sole discretion to hold the arbitration under AAA rules, securities dealers rules, or any other organization's rules. (*Ajamian, supra,* 203 Cal.App.4th at p. 791.) In *Beco,* the agreement did not attach the AAA rules or provide a method for the plaintiff to locate and read the rules before he signed the agreement. (*Beco, supra,* 86 Cal.App.5th at p. 306.) Defendants tell us that in *Gostev*, the provision incorporating AAA commercial rules "did not provide a means to review those AAA Rules," but the *Gostev* court did not even mention that point. What *Gostev* did was to emphasize the " 'heightened standard' " for proving a delegation to the arbitrator and the reason for that rule: " ' "because the law is solicitous of the parties actually *focusing* on the issue." ' " (*Gostev, supra,* 88 Cal.App.5th at p. 1052.)

In *Mondragon*, the court gave several reasons for concluding the trial court properly decided arbitrability; these included, in addition to the incorporation by reference of AAA rules, that the agreement contained a carve-out that arguably covered the dispute and a severability provision indicating a court may decide at least some arbitrability issues. (*Mondragon, supra,* 101 Cal.App.5th at pp. 599, 607-610.) But *Mondragon* also plainly stated that "the mere reference to the URL [of the homepage of AAA's website] and the offer to provide the rules were not enough to delegate to the arbitrator authority to decide arbitrability." (*Id.* at p. 605, fn. 4.) *Mondragon* quoted the *First Options* concern that " '[a] party often might not focus upon [the arbitrability] question' " (*Mondragon,* at p. 605), and recognized "there are 'many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability.' " (*Id.* at p. 606.)[3]

---

[3]  The *Ajamian, Beco* and *Mondragon* cases also point out that the AAA rules do not state the arbitrator has "exclusive" authority to determine arbitrability issues, but rather only that the arbitrator has "the power" to rule on the arbitrator's jurisdiction. (*Mondragon, supra,* 101 Cal.App.5th at p. 606; *Beco, supra,* 86 Cal.App.5th at p. 306; *Ajamian, supra,* 203 Cal.App.4th at p. 790.) These cases observe that the AAA rule "permits the arbitrator to rule on jurisdictional objections, but does not remove the court's authority to (also) determine arbitrability issues – particularly after ' "litigation has already been commenced." ' " (*Mondragon,* at pp. 606-607, citing *Beco,* 86 Cal.App.5th at p. 306 and *Ajamian,* at p. 790.) The high court and *Sandquist,* however, pose the delegation question as " ' "who has the *primary* power to decide arbitrability." ' " (*Sandquist, supra,* 1 Cal.5th at p. 243,

In short, certainly the facts in the *Ajamian* line of cases can be distinguished from the facts in this case. But that does not mean the principles those cases enunciate are wrong. It is our task to apply those principles – and most particularly the principle that "the law is solicitous of the parties actually *focusing* on the issue" (*Gilbert, supra,* 174 Cal.App.4th at p. 1192) – to the circumstances of this case. We cannot see how a delegation to the arbitrator can be clear and unmistakable when there is no delegation clause in the arbitration agreement, no delegation clause in the mutual arbitration policy, and no indication that among the incorporated AAA procedural rules (of which there are many) is a delegation clause.

Defendants also invoke *Sandquist, supra,* 1 Cal.5th 233, contending that *Sandquist* "articulated the framework for analyzing . . . the standards for enforcing a delegation to the arbitrator of threshold issues." Defendants completely misread *Sandquist*, which did not involve either incorporation by reference or a delegation clause. The question in *Sandquist* was "*who decides* whether the [arbitration] agreement permits or prohibits classwide arbitration, a court or the arbitrator?" (*Id.* at p. 241.) The court concluded there was no universal rule: "Rather, who decides is in the first instance a matter of agreement, with the parties' agreement subject to interpretation under state contract law." (*Ibid.*) In the *Sandquist* case, "[u]nder state law, these parties' arbitration agreement allocates the decision to the arbitrator. Under federal arbitration law, no

quoting *First Options, supra,* 514 U.S. at p. 943, italics added.) We need not consider the point here.

22

contrary presumption requires a different result, so the issue remains one for the arbitrator."  (*Ibid.*)

*Sandquist* does not assist defendants.  The employment agreements in *Sandquist* contained arbitration clauses with "comprehensive" language, and "[t]he procedural question those claims present –whether Sandquist may pursue his claims on a class basis – directly arises from his underlying claims." (*Sandquist, supra,* 1 Cal.5th at p. 246.)  "Ultimately dispositive" were "long-established interpretive principles," one of which was that all doubts are resolved in favor of arbitration.  (*Id.* at p. 247.)

But doubts are *not* resolved in favor of arbitration when the question is whether the parties delegated to the arbitrator decisions on arbitrability, "e.g., whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand." (*Sandquist, supra,* 1 Cal.5th at p. 251.)  In *Sandquist,* the court *rejected* the employers' "assumption that as a matter of state law, the underlying question concerning the availability of class arbitration should itself be deemed a question of arbitrability for courts."  (*Id.* at pp. 249-250.)  Quite the opposite: the availability of classwide arbitration was a " 'procedural precondition[] for the use of arbitration' " (*id.* at p. 252), not an arbitrability issue.

*Sandquist* explained that federal law does not alter "the conclusion state law would otherwise reach here." (*Sandquist, supra,* 1 Cal.5th at p. 251.)  Under federal law, " 'courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability," ' " and " '[o]n the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.' "

23

(*Id.* at pp. 251-252.) Classwide arbitration is in the latter category: "Whether an agreement forbids class arbitration concerns 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.' [Citation.] It does not touch on any threshold matter necessary to establish as a condition precedent an agreement to arbitrate, but rather entails 'what *kind of arbitration proceeding* the parties agreed to.' [Citation.] The question involves 'contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question.' " (*Id.* at pp. 252-253.)

In short, nothing in *Sandquist* casts any doubt on our conclusion in this case.

Throughout their discussion of distinctions in the *Ajamian, Beco, Gostev* and *Mondragon* cases, defendants repeatedly complain that in the trial court, plaintiff did not respond to defendants' delegation claim. (As described earlier, plaintiff argued he was exempt from the FAA as a transportation worker and under California law his claims for unpaid wages and his PAGA claims could proceed in court.) We fail to see any relevance in defendants' assertions; it was defendants who contended the trial court had no authority to consider plaintiff's FAA exemption defense. Defendants cite no authority for their implication that plaintiff's litigation tactics should have any effect on the resolution of this appeal on an issue first raised by the defense. Nor is there any relevance to defendants' continual emphasis on the unconscionability issues that were present as additional factors in the *Ajamian* line of cases. As we have already observed, there are *two* prerequisites for a delegation clause to be effective: The " 'language of the clause must be clear and unmistakable' " and the delegation cannot be revocable

24

under state contract defenses such as unconscionability.
(*Aanderud, supra,* 13 Cal.App.5th at p. 892.)  Where there is no
clear and unmistakable delegation to the arbitrator, the
purported delegation is ineffective, and the presence or absence of
unconscionability factors is immaterial.  This explains the trial
court's refusal to address unconscionability.

We hold as a matter of law that, in the
circumstances of this case, the three-step process necessary for
one of the contract parties to discover that he or she has
delegated the power to decide arbitrability issues to the
arbitrator, contrary to the usual rule that a court is to decide
those issues, does not constitute a clear and unmistakable
delegation of that power to the arbitrator.

We next turn to the court's ruling on the scope of the
arbitration.

## 2. The Labor Code Section 203 Claim

Under Labor Code section 229, "[a]ctions to enforce the
provisions of this article [§§ 200-244] for the collection of due and
unpaid wages claimed by an individual may be maintained
without regard to the existence of any private agreement to
arbitrate."  One of plaintiff's claims was for penalties under
section 203 (waiting time penalties).[4]  Under section 203, if an
employer "willfully fails to pay . . . any wages of an employee who

---

[4] This was plaintiff's seventh cause of action, for "failure to
pay all wages timely upon separation of employment in violation
of Labor Code sections 201, 202, and 203."  Plaintiff alleged that
defendants' practices "include failing to pay at least minimum
wage for all time worked, overtime wages for all overtime hours
worked, meal period premium wages, and/or rest period premium
wages."

25

is discharged or who quits," the wages continue "as a penalty from the due date thereof" until paid or until a lawsuit is begun, up to a maximum of 30 days. (Lab. Code, § 203, subd. (a).)

As recounted earlier, the trial court held that section 229 shielded from arbitration both plaintiff's claim for nonpayment of wages *and* his claim for waiting time penalties to the extent that claim was based on failure to pay minimum wages. The trial court found plaintiff's other wage and hour claims were arbitrable and plaintiff does not contend otherwise: overtime is governed by section 510 and thus not within the purview of section 229, and causes of action for "failure to authorize or permit" meal periods and rest periods under section 226.7 are not actions for due and unpaid wages, but rather actions "for a failure to provide mandated meal or rest breaks." (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 684 (*Lane*), citing *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256-1257 ["[A] section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks."].)

*Lane* further held that a cause of action for waiting time penalties "do[es] not seek to collect due and unpaid wages," and "to the extent [it] . . . could be interpreted to seek 'due and unpaid wages,' [it is] duplicative of the [plaintiff's] cause of action [for failure to pay wages]." (*Lane, supra,* 224 Cal.App.4th at p. 684.) We disagree with the breadth of this language in *Lane.*

Here, the trial court found plaintiff's claim for waiting time penalties non-arbitrable only to the extent it was based on his minimum wage claims. Defendants contend this was error, because the arbitrator "is the proper factfinder as to the elements of the [waiting time penalties] claim" even if there are

overlapping elements; arbitrable claims must be compelled to arbitration even where the result may be inefficient; arbitration is the preferred forum; and the court should not "rewrit[e] the parties' contract."

We see no reversible error. Nothing in the trial court's decision prevents the arbitrator from deciding whether defendants must pay waiting time penalties based on overtime, meal period and rest break violations. (See *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 117 ["missed-break premium pay constitutes wages for purposes of Labor Code section 203, and so waiting time penalties are available under that statute if the premium pay is not timely paid"]; *id.* at p. 107 ["overtime premium pay has always also been understood as wages"].) Plaintiff cannot recover waiting time penalties twice, so if they are awarded by the arbitrator, there will be no need for the court to address the claim further.

Further, if the arbitrator does not award waiting time penalties based on the arbitrable claims, we fail to see how defendants can fairly claim that waiting time penalties should not attach if the court finds they have willfully failed to pay minimum wages. We agree with the trial court that the language of section 229 "arguably encompasses a section 203 claim for waiting time penalties based on failure to pay minimum wages." Section 229 shields from arbitration "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages." Section 203 is one of the "provisions of this article" and, as the trial court noted, "minimum wages that are 'due and unpaid' have, by definition, not been timely paid to an employee

27

who was discharged or quit, thereby entitling the employee to waiting-time penalties."[5]

---

[5] Plaintiff argues the trial court's order on waiting time penalties should be affirmed for different reasons. We disagree with plaintiff's first reason and need not consider the second, which plaintiff raised for the first time in his respondent's brief.

First, plaintiff contends the trial court could have denied arbitration of the waiting time penalties based on Code of Civil Procedure section 1281.2, which allows the court to refuse to enforce an arbitration agreement where a party to the arbitration is also a party to a pending court action with a third party arising out of the same transaction and there is a possibility of conflicting rulings. (§ 1281.2, subd. (c).) According to plaintiff, Maersk is the third party. This argument goes nowhere because Maersk is *not* a third party; Maersk is indisputably entitled to enforce the arbitration agreement directly. (See *Maxwell v. Atria Management Co., LLC* (2024) 105 Cal.App.5th 230, 247 ["As used in the statute, a 'third party' is one who is neither bound by nor entitled to enforce the arbitration agreement."].)

Plaintiff's second argument is that the arbitration agreement is unenforceable under Labor Code section 432.6. Section 432.6 "applies to contracts for employment entered into, modified, or extended on or after January 1, 2020." (§ 432.6, subd. (h).) It provides, among other things, that "[a] person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act . . . *or this code*, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation." (Lab. Code, § 432.6, subd. (a), italics added.) There is an exception for agreements that are enforceable under the FAA: "Nothing in this section is intended to invalidate a written

### 3. The PAGA Claim

#### a. Background legal principles

PAGA permits an aggrieved employee to bring a civil action on behalf of the employee and other employees to collect civil penalties, as an alternative to enforcement by the state. (Lab. Code, § 2699.)  The court in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*) explains the development of the law concerning the arbitration of PAGA claims.

State law "prohibit[s] wholesale waiver of PAGA claims." (*Adolph, supra,* 14 Cal.5th at p. 1114.)  This was established in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 (*Iskanian*) ["an employee's right to bring a PAGA action is unwaivable"].  The *Iskanian* court reasoned that a waiver of the right to bring a PAGA action "serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' it is against public policy and may not be enforced."  (*Iskanian,* at p. 383.)  While a state law rule "may not be enforced if it is preempted by the FAA" (*id.* at p. 384), *Iskanian* held the rule against PAGA waivers did not frustrate the FAA's objectives because "a PAGA action is a dispute between

_____

arbitration agreement that is otherwise enforceable under the [FAA]."  (§ 432.6, subd. (f).)  The arbitration agreement here was signed in May 2020, and despite arguing (successfully) to the trial court that plaintiff is exempt from the FAA, plaintiff made no claim, until now, that the entire arbitration agreement is illegal.  In addition, plaintiff concludes his briefing by telling us "the trial court ruling should be affirmed."  In these circumstances, we decline to address the arguments over section 432.6.

an employer and the state Agency." (*Ibid*.) Cases after *Iskanian* have construed *Iskanian* to mean that "a single representative claim cannot be split into an arbitrable individual claim and a nonarbitrable representative claim." (E.g., *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 625 (*Correia*).

In *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), the United States Supreme Court held that *Iskanian* was preempted in part by the FAA. Our Supreme Court in *Adolph* explained the effect of *Viking River*: First, *Viking River* "left undisturbed" the *Iskanian* holding "that a predispute categorical waiver of the right to bring a PAGA action is unenforceable." (*Adolph, supra,* 14 Cal.5th at p. 1117.) "In addition, *Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims). [Citations.] . . . . *Viking River* also left this rule intact." (*Adolph,* at pp. 1117-1118.) However, *Viking River* "held that 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.'" (*Adolph,* at p. 1118, quoting *Viking River,* at p. 662.)

*Adolph* concluded: "Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims *if the agreement is covered by the FAA*." (*Adolph, supra*, 14 Cal.5th at p. 1119, italics added.)

### b. Contentions and conclusions

In their opening brief, defendants offer a one-paragraph argument that the trial court erred in concluding that, under California law, no part of plaintiff's PAGA claim was arbitrable.

As noted earlier, the trial court observed that "[s]tate law rules that are preempted by the FAA are nevertheless good law in cases that do not involve the FAA." (As we have observed, defendants do not dispute, for purposes of this appeal, that California law, "not the FAA," governs the arbitration agreement.)

Defendants rely on *Iskanian* to argue the trial court erred. They cite *Iskanian*'s conclusion that the employer "cannot compel the waiver of [the plaintiff's] representative PAGA claim but that the agreement is otherwise enforceable according to its terms." (*Iskanian, supra,* 59 Cal.4th at p. 391.) Defendants also cite two 9th Circuit cases: *Sakkab v. Luxottica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 438 (*Sakkab*) ["[P]arties are free to arbitrate [PAGA claims] using the procedures of their choice."], and *Valdez v. Terminix Internat. Co. Limited Partnership* (9th Cir. 2017) 681 Fed.Appx. 592, 594 (*Valdez*) ["*Iskanian* and *Sakkab* clearly contemplate that an individual employee can pursue a PAGA claim in arbitration, and thus that individual employees can bind the state to an arbitral forum."]. That is the entirety of defendants' argument that the trial court erred.

Plaintiff responds by pointing out that, because the FAA does not apply, California law applies without consideration of preemption issues. Plaintiff cites *Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833 (*Garrido*), and *Lane, supra,* 224 Cal.App.4th 676. In *Garrido*, the FAA did not apply because (as here) the plaintiff was a transportation worker; the court found that the arbitration agreement's class waiver provision was unenforceable under *Gentry v. Superior Court* (2007) 42 Cal.4th 443, despite *Iskanian*'s holding that *Gentry*'s rule against employment class waivers was preempted by the

31

FAA.[6] (*Garrido, supra,* 241 Cal.App.4th at pp. 837-838, 841, 845.) In *Lane,* the FAA did not apply because the employer did not show that the subject matter of the agreement involved interstate commerce. While Labor Code section 229 (allowing actions for collection of due and unpaid wages without regard to any private arbitration agreement) is preempted where the FAA applies (*Perry v. Thomas* (1987) 482 U.S. 483, 492), the trial court may apply section 229 when the FAA does not apply. (*Lane, supra,* 224 Cal.App.4th at pp. 687-688.)

We agree with plaintiff that this same principle applies to PAGA claims. This means that the preemption principles announced in *Viking River* do not apply when the FAA does not apply. As we have already observed, our own Supreme Court has stated: "Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims *if the agreement is covered by the FAA.*" (*Adolph, supra,* 14 Cal.5th at p. 1119, italics added.)[7]

---

[6] In *Iskanian*, the court held that "a state's refusal to enforce [] a waiver [of the right to class proceedings] on grounds of public policy or unconscionability is preempted by the FAA," and "our holding to the contrary in [*Gentry*] has been abrogated by recent United States Supreme Court precedent." (*Iskanian, supra,* 59 Cal.4th at p. 360.)

[7] In *Adolph,* the court held that "[w]here a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph, supra,* 14 Cal.5th at p. 1114.)

Here, the FAA does not apply. California law applies. Thus, we follow *Correia* and other cases that have construed *Iskanian* to mean that a representative claim "cannot be split into an arbitrable individual claim and a nonarbitrable representative claim." (*Correia, supra,* 32 Cal.App.5th at p. 625.) *Viking River* recognized as much when it described the "rule of *Iskanian*" as "preclud[ing] division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 596 U.S. at p. 662.) As *Correia* also points out (*Correia*, at p. 625), *Iskanian* stated that Justice Chin "correctly observes [that] '*every* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' " (*Iskanian, supra,* 59 Cal.4th at p. 387, quoting conc. opn. of Chin, J., at p. 394.)

Defendants PAGA-splitting argument fails for another reason. In *Correia* – a case involving interstate commerce where the FAA applied – the court agreed with other Court of Appeal cases which "have uniformly held that an employee's predispute agreement to arbitrate PAGA claims is not enforceable without the state's consent." (*Correia, supra,* 32 Cal.App.5th at p. 621, citing cases.)[8] *Correia* explained: "Relying on the rationale

_____

[8] The cases *Correia* cited are: *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 869–872; *id.* at p. 860 ["We hold that an agreement to arbitrate a PAGA claim, entered into before an employee is statutorily authorized to bring such a claim on behalf of the state, is an unenforceable predispute waiver."]; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445–449; *id.* at p. 445 ["a defendant cannot rely on a predispute waiver by a private employee to compel arbitration in a PAGA case, which

underlying *Iskanian*'s PAGA-waiver-enforceability and FAA-preemption conclusions, these courts reasoned that because the state is the real party in interest in a PAGA action and a PAGA plaintiff asserts the claim solely on behalf of, and as the proxy for, the state, the employee's predispute arbitration agreement does not subject the claim to arbitration because the state never agreed to arbitrate the claim. [Citations.]" (*Correia,* at pp. 621-622.) "Under these decisions, predispute arbitration agreements generally do not support the compelled arbitration of PAGA claims because the state retains control of the right underlying the employee's PAGA claim at least until the state has provided the employee with implicit or explicit authority to bring the claim. [Citation.] At that point, an employee's waiver of the trial right and an agreement to arbitrate may be enforceable. [Citation.] But before that time, the employee has no authority or authorization to waive the state's rights to bring the state's claims in court." (*Id.* at p. 622.)

We agree with the *Correia* line of authority, which remains valid in cases not governed by the FAA. *Correia* recognized, as do we, that several federal courts have reached a different conclusion, including the *Valdez* case defendants cite for the proposition that "*Iskanian* and *Sakkab* clearly contemplate that an individual employee can pursue a PAGA claim in arbitration,

is brought on behalf of the state"]; and *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677–680; *id.* at p. 678 ["[b]ecause a PAGA plaintiff, whether suing solely on behalf of himself or herself or also on behalf of other employees, acts as a proxy for the state only with the state's acquiescence [citation] and seeks civil penalties largely payable to the state via a judgment that will be binding on the state, a PAGA claim cannot be ordered to arbitration without the *state's* consent."].

and thus that individual employees can bind the state to an arbitral forum."  (*Valdez, supra,* 681 Fed. Appx. at p. 594.)  *Correia* describes the *Valdez* analysis and was "not persuaded."  (*Correia, supra,* 32 Cal.App.5th at p. 623.)  Nor are we.

*Correia* explains that *Valdez* focused on the employee's role as the state's proxy, but "under the PAGA statutory scheme, the plaintiff does not assume this proxy role until it is an ' "aggrieved employee." ' [Citation.]  When an employee signs a predispute arbitration agreement, he or she is signing the agreement solely on his or her own behalf and not on behalf of the state or any other third party.  Thus, the agreement cannot be fairly interpreted to constitute a waiver of the state's rights to bring a PAGA penalties claim in court (through a qui tam action by its deputized employee).  Further, *Valdez*'s suggestion that *Sakkab* 'recognized' PAGA claims could be compelled to arbitration overstates the court's holding.  (*Valdez, supra*, 681 Fed. Appx. at p. 594.)  Although *Sakkab* did assume PAGA claims can be arbitrated, the *Sakkab* court did not consider the issue whether a private party can waive the state's right to litigate its PAGA claims in court *before any dispute has arisen.*"  (*Correia, supra,* 32 Cal.App.5th at p. 624.)

In short, California law applies, without regard to the preemption ruling in *Viking River*, so the "rule of Iskanian" – that "precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate" (*Viking River, supra,* 596 U.S. at p. 662) – *does* apply.  In addition, under California law, the principle applied in the *Correia* line of cases – that "an employee's predispute agreement to arbitrate PAGA claims is not enforceable without the state's consent" (*Correia, supra,* 32 Cal.App.5th at p. 621) – has not been overruled.

35

In their reply brief, defendants insist it is "crystal clear" that PAGA civil penalty claims are arbitrable and that their position "rests on California law alone." They rely on and quote from *Adolph*, where the court states that arbitrating individual claims does not effect a severance: "When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action." (*Adolph, supra,* 14 Cal.5th at p. 1124.) We have no quarrel with that principle, but it is irrelevant here. Defendants have lost sight of the premise for *Adolph*'s discussion (which concerns the plaintiff's standing to pursue non-individual PAGA claims once his individual PAGA claims have been compelled to arbitration). At the risk of repetition, the premise is that "*Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims *if the agreement is covered by the FAA*." (*Adolph,* at p. 1119, italics added.) In fact, *Adolph* points out that "it is a regular and accepted feature of litigation governed by the FAA that the arbitration of some issues does not sever those issues from the remainder of the lawsuit." (*Id.* at p. 1125.) In short, defendants' reliance on *Adolph*'s discussion of standing is simply inapt, and does nothing to advance their assertion that PAGA claims are arbitrable in cases where the FAA does not apply.

Defendants cite *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001 (*Leeper*), review granted April 16, 2025, S289305, where the Court of Appeal held that "every PAGA action necessarily includes an individual PAGA claim." (*Leeper, supra,* 107 Cal.App.5th at p. 1005.) Defendants quote from *Leeper*'s explanation, but, notably, they omit by ellipsis the words we emphasize in boldface and italics: "We recognize that the

existence of an individual PAGA claim in every PAGA action means this claim often may be separately compelled to arbitration **_where the FAA applies_** (see _Viking River, supra_, 596 U.S. at p. 642), which may trigger a stay of the litigation of the representative PAGA claim (see Code Civ. Proc., § 1281.4) and even potentially affect the outcome of that litigation via issue preclusion." (_Leeper,_ at p. 1010, boldface & italics added.) We also find two other cases defendants cite on this point, _Rodriguez v. Lawrence Equipment, Inc._ (2024) 106 Cal.App.5th 645, 656, 658 and _Rocha v. U-Haul Co. of California_ (2023) 88 Cal.App.5th 65, 76, equally unpersuasive.

In short, none of the cited cases has any bearing on the principles that govern in cases, as here, where the FAA does not apply. Defendants finally refer, without citing or discussing the cases, to "the now-dead 'State must consent' concept" and "the obsolete cases" plaintiff cites, asserting that _Adolph_ "did not adopt the 'State must consent' rationale of pre-_Adolph_ and pre-_Viking River_ appellate decisions." But _Adolph_ had no occasion to consider that issue, and an opinion is not authority for an issue not considered. (_Santa Clara County Local Transportation Authority v. Guardino_ (1995) 11 Cal.4th 220, 243.)

In sum, we find no error in the trial court's conclusion that no part of plaintiff's PAGA claim is arbitrable.

## DISPOSITION

The order is affirmed.  Plaintiff shall recover costs on appeal.

**CERTIFIED FOR PUBLICATION**


RUBIN, J.*

We Concur:



STRATTON, P. J.



VIRAMONTES, J.

---

\*        Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.